## John Conn v. Town of Brattleboro et al

[140 A2d 6]

January Term, 1958.

Opinion Filed February 8, 1958.

*Irwin S. Kendall* for the petitioner.

*Gannett & Oakes* and *John S. Burgess* for the petitionee.

*A. Luke Crispe* for the intervenor.

**Holden, J.** This proceeding in equity challenges the authority of the selectmen of the town of Brattleboro to validate the vote of a special town meeting to purchase and finance parking facilities. The plaintiff appellant is a taxpayer in that town. He brought his complaint to the Court of Chancery for Windham County to obtain a permanent injunction to restrain the execution of the project affirmatively voted at the meeting. His claim to equitable relief is founded on certain irregularities in the publication of the notice of the meeting.

In his complaint, the plaintiff requested all other interested taxpayers to participate in the litigation. In response to this request, the chancellor ordered that notice by publication be given to all interested residents of Brattleboro to intervene in the proceeding at their election. The defendant Zelbow thereupon entered in support of the vote and the validating action that followed. He stands in opposition to the equitable relief sought by the plaintiff.

The cause was submitted on an agreed statement of facts. From the facts stated, it appears that by unanimous decision of the selectmen, August 28, 1957, a special town meeting of the voters of Brattleboro was directed to be held September 18,

1957. The purpose of the meeting was to determine whether the voters of the town would authorize the issue of revenue bonds in the amount of $230,000 to provide off-street parking facilities at the Harmony Place properties, so-called, in that town.

The official notice and warning of the meeting stated its time, place and purpose. The notice was duly posted in five public places within the town during the two week period immediately preceding the election. The notice was published in the Brattleboro Daily Reformer, a newspaper of known circulation in the town, on August 29, 1957, September 14, 1957 and September 17, 1957.

In addition to the formal notice provided, the impending meeting and the project to be voted were given widespread publicity throughout the community. News stories appeared in the Brattleboro Daily Reformer on eleven different dates from September 4 through 17, 1957. Two different news items appeared on September 10 and three on September 17. News photographs also were published on three different dates preceding the election. A full page advertisement was purchased by the Brattleboro Chamber of Commerce and published in the newspaper on September 17. The project was the subject of six different editorials appearing in the Reformer during the month of September before the meeting. In addition to the newspaper publicity, the subject of the special town meeting was discussed and advertised by repeated radio broadcasts on September 7, 8, 17 and 18. Some 3340 hand bills were distributed in the community between the dates of September 8 and September 18. The results of the special meeting established 870 votes in favor of the project and bond issue and 681 votes in opposition.

Following the special town meeting, the selectmen at a duly warned meeting of their board, October 9, 1957, by vote of four to one, adopted a confirmatory resolution which contained the following declaration:

> " * * * we hereby find and state that the defect or omission whereby the Notice of the Special Town Meeting of September 18, 1957, was published on August 29,

September 14 and September 16, 1957 instead of on August 29, September 5 and September 12, 1957, was the result of oversight, inadvertence and mistake of law and fact; we further find that in addition to the legal posting of the Warning and Notices published in the Brattleboro Daily Reformer, there was ample public notice of the said meeting in the form of newspaper articles, newspaper photographs, letters to the Editor of the Brattleboro Daily Reformer, direct mailings to all voters by the Brattleboro Chamber of Commerce, radio announcements over Radio Station WTSA in Brattleboro, and by other means, all tending to notify the qualified voters and others of the date, time, place and purpose of the Special Town Meeting of September 18, 1957 called to consider the Harmony Place Parking project; we further find that the required length of notice and notice of the purpose of the meeting has been had; and we therefore vote to validate the issuance of bonds under and pursuant to said Acts as aforesaid."

The special town meeting called to decide upon the Harmony Place parking project, was undertaken by the town of Brattleboro pursuant to the provisions of No. 231 of the Acts of 1957. The statute, in general terms, enables the town, or other political subdivisions specified, to pledge the credit of the municipality to finance the acquisition of off street parking facilities by the issuance of bonds. It provides for the satisfaction of the bonds from revenues produced from charges made for using the parking facilities. Section 13 of the act includes the following:

" —The notice of the meeting shall be published and posted as provided in section 3692 of the Vermont Statutes, Revision of 1947. When a majority of all of the voters voting on the question at such meeting vote to authorize the issuance of bonds under this act to pay for such public off street parking project or projects, the legislative body shall be authorized to establish such public off street parking project or projects and to issue bonds as provided in this act. Sections 3693 and 3694

of the Vermont Statutes, Revision of 1947, as amended, shall apply to the proceedings taken hereunder * * *"

The provisions of V. S. 47, §3692 relating to publishing and posting notice require:

" —The clerk of the municipal corporation shall cause notice of such meeting to be published in a newspaper of known circulation in such municipality once a week for three consecutive weeks on the same day of the week, the last publication to be not less than five nor more than ten days before such meeting. Notice of such meeting shall also be posted in five public places within such municipality for the two weeks immediately preceding such meeting. * * *"

No question arises on this appeal concerning V. S. 47, §3694. V. S. 47, §3693, as amended by No. 126 of the Acts of 1957, provides:

" —Whenever the qualified voters of a municipal corporation, as defined in this chapter, have voted by the requisite majority to authorize issuance of bonds to pay for any public improvement, and such proceedings are defective because of failure to comply with any of the statutory requirements therefor, although the required length of notice and notice of the purpose of such meeting has been had, such omissions may be cured by a resolution of such legislative branch by a vote of two-thirds of all its members at a regular or a special meeting called for that purpose, stating that the defect was the result of oversight, inadvertence or mistake of law or fact. When such omission has been so supplied by such resolution, all bonds or other financing within the terms of the action of the qualified voters shall be as valid as if the statutory requirement had been complied with."

In substance, the decree appealed from held that the requirements of notice provided in §3692 were not fulfilled. However, the chancellor adjudged that the defect in the publication of the formal notice of the meeting had been legally

supplied and corrected by the validating resolution of the required majority of the selectmen on October 9, 1957, pursuant to the provisions of §3693 as amended.  The court upheld the vote of the town meeting and denied the injunctive relief sought by the plaintiff taxpayer.

The plaintiff contends the curative remedy provided by §3693 could not be applied to save the vote for the reason that the "length of notice" as used in the statute was not met.  He advocates that these words of the statute apply to each and every time interval provided in §3692.  He admits there was a sufficient and correct lapse of time between the first published notice and the special meeting.  He insists, however, that the failure of the intervening publications to follow the first by precisely seven and fourteen days, with the final publication spaced no more than ten nor less than five days in advance of the election, constituted incurable defects that destroyed the election and the vote.

■  This result can prevail only if the appellant's interpretation of §3693 fulfills the legislative intent.  The intention of the legislature constitutes the law. *Smith & Son, Inc.* v. *Hartford*, 109 Vt. 326, 330, 196 A 281; *Coral Gables, Inc.* v. *Christopher*, 108 Vt 414, 418, 189 A 147, 109 ALR 474.  This rule has been characterized as the "pole-star in construing a statute, and to effectuate such intention, the language of the legislature may be enlarged or restrained, if necessary, and the construction should be on the whole statute." *Simonds* v. *Estate of Powers*, 28 Vt 354, 355.

■  The intent must be ascertained from the act itself, if the language is clear.  When the language used creates a doubtful meaning the true meaning may be ascertained by consideration of its policy and purpose with reference to all of its provisions, its title, pre-existing legislation on the subject and other circumstances indicative of the intent.  *Doubleday* v. *Stockbridge*, 109 Vt 167, 172, 194 A 462; *Washington County* v. *Gates*, 108 Vt 117, 120, 183 A 506.  The language of the statute is to be read in the light of the legislative purpose, to the end that a fair and reasonable construction may be reached, capable of accomplishing the statutory objective. *Sorrell* v.

*White*, 103 Vt 277, 281-282, 153 A 359; *In re Fullam's Estate*, 96 Vt 308, 314, 19 A 433; *Catlin* v. *Hall*, 21 Vt 152, 157. The remedial nature of the statute before us entitles it to a liberal construction. *Menut & Parks Co.* v. *St. Johnsbury*, 114 Vt 41, 45, 39 A2d 342, 156 ALR 404; *Hayden* v. *Caledonia National Bank*, 112 Vt 491, 494, 28 A2d ·389, 142 ALR 1178; *Packett* v. *Moretown Creamery Co.*, 91 Vt 97, 101, 99 A 638, LRA, 1918F, 173.

By its title and text, §3693 as amended, affords a remedy for the validation and correction of technical irregularities incident to municipal elections called for the purpose of voting and financing public improvements.

Reference to the law in effect before the origin of §3693 points out the hardship resulting to a municipality for a deviation from the exact requirements of the statute relating to public improvements. The consequence of defective notice was the defeat of the vote of the electorate. *Pratt* v. *Swanton*, 15 Vt. 147, 151.

V. S. 47, §3693 had its beginning in No. 64 of the Acts of 1939. In its original enactment it reached only defects arising from a failure to strictly comply with the provisions of P. L. 3605 (V. S. 47, §3691), where "such proceedings are defective only because the legislative branch (of the municipality) did not previously determine, by resolution passed by a vote of two-thirds of all its members taken at a regular or special meeting called for that purpose, that the public interest or necessity demanded the improvements and that the cost of the same would be too great to be paid out of ordinary income and revenue, * * *." No relief was afforded the municipality for irregularities developing from defective notice.

At the next session of the Legislature, the scope of the curative provisions of the original act was substantially enlarged. Corrective action was no longer restricted to P. L. 3606. It was expressly extended to "failure to comply with any of the statutory requirements therefor although the length of notice and notice of the purpose of the meeting has been had * * *." No. 51 of the Acts of 1941.

■ ■ The construction claimed by the plaintiff for the

present statute gives no effect to the 1941 amendment. His interpretation of the present law would forbid any correction of defects arising from a departure of the publication schedule set forth in §3692. It is a general rule of statutory construction that some purpose must be assigned to an amendatory act, the contrary not appearing. *Winooski* v. *Companion*, 105 Vt 1, 3, 162 A 795; *Essex Storage Electric Co.* v. *Victory Lumber Co.*, 95 Vt 117, 120, 112 A 832. The rule has application here. We hold that the 1941 amendment was designed to provide a curative remedy in instances where the publication schedule provided in §3692 was not strictly followed.

The history of the statute signifies a growing appreciation by the Legislature that the efforts of municipal government to accomplish public improvements are beset with legal intricacies. It recognized that the fiscal affairs of our municipalities are rarely administered by legal technicians. See 2 Sutherland, Statutory Construction, (3rd Ed.) §2217, p. 141.

The evil which the Legislature sought to correct was the frustration and defeat of the vote of the electorate. At the same time, reasonable restraints were preserved by the requirement that the vote, to be protected, must be by the requisite majority after the purpose of the meeting had been published for the required length of time.

■ Some ambiguity arises from the use of the word "although." One of the definitions given the word "although" is "be it that." Webster's New International Dictionary (2d Ed. 1950, unabr.) p. 77. Its intendment in the statute is synomous with "provided," as imposing a condition precedent to curative action.

■ The words "length of notice" as used in the language of the statute refer to extent of the notice in point of time— the duration of the communication to the voters from its commencement to the election. See Webster's New International Dictionary, (2d Ed. 1950, unabr.) p. 1415.

By computing from the sequence of publications prescribed in §3692, the parties are in accord that the first publication of the warning of the special meeting was required to be made not more than twenty-four nor less than nineteen days

before the election. The special town meeting in question was held on the twentieth day following the date of the first published notice. The length of notice was adequate in point of time to enable the selectmen, by their curative resolution, to validate the vote registered on September 18.

The resolution adopted conforms to the procedure established by §3693 as amended. It states that the defect or omission in publication of the interim notices "was the result of oversight, inadvertance and mistake of law and fact—." This finding is clearly consistent with the widespread publicity that preceded the voting.

The chancellor determined that the irregularity in the publication of the formal notice was remedied by the resolution of the selectmen. He declared the action taken at the special meeting of the town of Brattleboro on September 18, 1957, was rendered valid. His adjudication was sound. Equitable relief was properly denied the plaintiff.

■ This result is reached without answering the question of whether there was substantial compliance with the statutory requirements of notice without the aid of the validating act. Consideration of this issue is not necessary to the disposition of this appeal. Furthermore, the court below determined the question in the negative. The defendant town has briefed the question, but no exception was taken to this ruling of the court. The question is not before us. *Wool* v. *Larner*, 112 Vt 431, 437, 26 A2d 89; *Vermont Evaporator Co.* v. *Taft*, 107 Vt 400, 404, 181 A 100.

*Decree affirmed.*